[No. 1,635.]

# CHRISTIAN J. MEGERLE *v.* RICHARD P. ASHE, THOMAS VAN SYCLE AND LUTHER FLANDERS.

LAW OF A CASE.—A decision of the Supreme Court, made in a case which it sends back for a new trial, becomes the law of the case in all its stages.

PROOF OF THE FILING OF THE PLAT OF SURVEY OF PUBLIC LAND.—A notice published by the Register and Receiver of a United States Land Office, notifying those who claim pre-emption rights to file their declaratory statements on or before a day named in the notice, is not admissible in evidence for the purpose of proving the day on which the plat of the survey of a township was returned by the Surveyor-General to the local land office.

FILING DECLARATORY STATEMENT OF PRE-EMPTIONER.—Under the provisions of the Act of Congress, passed March 3d, 1853, the declaratory statement of a pre-emptioner must be filed within three months from the time the plat of the survey of the township is returned to the local land office, or it will not secure the claimant's right of pre-emption.

APPEAL from the District Court, Fifth Judicial District, County of San Joaquin.

Ejectment to recover the north-west quarter of Section twenty-one, T. P. 4 north, range 8 east, in the district of lands subject to sale at Stockton, California. The suit was commenced January 13, 1864. The history of this case will be found in the former reports, 24 Cal. 609; 27 Cal. 322 and 33 Cal. 75. Megerle settled on the land in 1850. It was not surveyed by the United States until May, 1855. Megerle filed his declaratory statement, as a pre-emptioner April 12, 1856. On the fourteenth of May, 1856, David S. Terry located State land warrants on the quarter section. On the first day of September, 1863, the United States issued a patent for the land to Megerle. On the eighth day of January, 1862, the State of California issued a patent for the land to Terry, as a part of the 500,000 acres granted to

this State for school purposes.   On the trial in the Court
below, the plaintiff introduced his patent and rested.   The
defendant Ashe claimed under Terry, and the other de-
fendants were his tenants.   Terry contended that Megerle
had lost his right of pre-emption by not availing himself of
it within three months of the time the plat of the survey of
the township was returned to the local land office.   The
stipulations mentioned in the opinion were offered in evi-
dence by the plaintiff in rebuttal.   The defendant objected
to the notice published by the Register and Receiver, be-
cause there was no authority in the land officers to publish
the notice, and that the publication of the notice was unau-
thorized by law, and that the fact of the publication thereof
did not tend to show that the plat had not been returned
to and filed in the land ·office as early as the fifth day of
December, 1855, and did not tend to show at what time
said plat was so returned to and filed in the said land office;
and that matters appearing in said stipulation are irrelevant
and inadmissible.

The notice to pre-emptors was first published in February,
1856, but what day in February the stipulation does not
state.   From the fact that the jury found that the plat of
survey was returned to the local land office on the fifteenth
day of February, 1856, it would appear that the notice to
pre-emptors was taken into consideration in fixing the date.
The plaintiff recovered judgment, and the defendants ap-
pealed.   The other facts are stated in the opinion.

*C. T. Botts*, for Appellant.

We take it that nothing is clearer than that it is the set-
tled doctrine, that a point once decided here, no matter how
erroneously, whether involved or not in the case as first pre-
sented, must ever afterwards be taken and accepted by all
inferior Courts, and by this Court, itself, as a matter fixed
and settled as far as the particular case is concerned.

For more than two centuries, it has been the settled doc-
trine of the English law, that no Court, original or appel-
late, can reverse, alter or modify its own judgment, for error

merely, after the lapse of the term at which the judgment is rendered. (*People* v. *Mayor of New York*, 25 Wendell, 254.)

This is universal law. There would be no quiet, no repose, no security, no safety under the law, were it otherwise.

But this question, the only one that could be mooted, has been mooted: Where a case is sent back for re-trial, may an error committed by the Appellate Court be corrected when the case is a second time brought before it? Whatever other Courts may have said upon this point, the language of this Court is too explicit, and has been too often repeated to leave any room for doubt, or any possibility of overthrow.

In support of these views we cite: *Dewey and Smith* v. *Gray*, 2 Cal.; *Clary* v. *Hoagland*, 6 Cal.; *Gunter* v. *Laffan*, 7 Cal.; *Davidson* v. *Dallas*, 15 Cal.; *Leese* v. *Clarke*, 20 Cal.; *Soule* v. *Ritter*, 20 Cal.; *Table Mountain Co.* v. *Stranahan*, 21 Cal. 548; *Moore* v. *Murdock*, 26 Cal.; *Lucas* v. *San Francisco*, 28 Cal.; *Murphy* v. *Estudillo*, 32 Cal.; *Kile* v. *Tubbs*, 32 Cal.; *Argenti* v. *Sawyer*, 32 Cal.; *Pollock* v. *McGrath*, 38 Cal.

The Federal Legislature, to whom the disposition of the public lands is entrusted, provides for pre-emption rights; that is, it prescribes terms and conditions upon which individuals may acquire the right of purchase at a nominal price. These are, generally, age, citizenship, dwelling, with intention to inhabit. The claimant is also required to make a declaratory statement. What statement? Why a statement of the facts upon which his claim is based. It is not enough that the facts exist. They must, at least, be certified to the officers of the Government by the solemn statement of the claimant. Now this Court, in opposition to the opinion of the Secretary of the Interior, determined that these provisions must be strictly construed and literally fulfilled. This much is certain. This, at least, has become the "law of this case."

When speaking of the plat of the survey, the United States statute uses the word "return." The District Judge uses the words "returned and filed."

What is the effect of this phraseology? It is the province of the Court to construe, but not to enlarge, abridge, or modify the statutes. This, then, must be taken as it undoubtedly was intended, as a construction of the statute. The jury are told that the question is, not when was the plat "returned," but when was the plat "returned and filed." From this the jury naturally and properly understood that the deposit of the plat by the Surveyor in the office of the Register did not constitute a return, but that such return was completed only by the act of filing on the part of the Register.

Is this a correct view of the case? What is intended by the word return? It has a common parlance and a technical meaning. In common parlance, it expresses the idea of restoring a thing to the place from which it was taken. In law, it is frequently used to signify a report made by one officer to another. Thus, Bouvier defines the "return of a writ" to be "a short account in writing, made by the Sheriff, or other ministerial officer, of the manner in which he has executed a writ." It is very evident that it is in this sense that the word is used in the Pre-emption Act. The claimant is allowed three months from the time the Surveyor reports the survey to the Register. The mere laying of a plat upon the Register's desk would not constitute a return of the plat to the office. It must come with the certificate or report of the Surveyor that it is what it purports to be; that the certificate or report must be signed by the officer whose business it is to make the return. This being done, as it was, in this case, on the fifth of December, 1865, the return became complete, and the time for filing the declaratory statement began to run.

The opposing theory on which it is sought to have this judgment affirmed, is that the return becomes complete only from the moment that the plat was filed. It is assumed that some act of the Register, very vaguely termed "filing," was necessary for the completion of the return. But that no act upon the part of the Register was contemplated by the statute, is evidenced by the fact that whatever is to be done in the way of return, is to be done by the Surveyor.

*Patterson, Wallace & Stow,* also for Appellant.

The verdict is against the evidence, and cannot be permitted to stand against the proof adduced upon the point, as to the time when the plat was returned to and filed in the Marysville Land Office. The Court instructed the jury to find a special verdict as to the time at which it was returned to that office, and the finding was that the plat "was returned to and filed in the United States Land Office at Marysville, California, on the fifteenth day of February, 1856."

Now, the only evidence which tended in the slightest degree to this result, was the circumstance that the officers at Marysville, in February, 1856, published a notice to the effect that it was necessary for settlers to file their declaratory statements, on or before May 15th, 1856. They had no authority by the mere publication of such a notice to extend the term beyond what Congress had prescribed: but it was sought to infer from the fact that they gave such a notice, the other alleged fact, that the plat was filed in that office on the fifteenth of February, 1856, because it is ninety days from fifteenth February to fifteenth May.

*George W. Tyler,* for Respondent, argued that there was a conflict in the evidence as to the time of filing the plat.

By the COURT:

When this case was here on the former appeal, there was no evidence of the time of the return of the plat of the survey of the township, except an entry on the margin of the plat—"Filed December 5th, 1855, Marysville Land Office." On the last trial in the District Court, a stipulation was offered in evidence to the effect, that on the 4th day of December, 1855, the Surveyor-General transmitted the plat to the Register at Marysville; that it was received by him on the next day, and by a letter of that date, addressed to the Chief Clerk in the Surveyor-General's office; he acknowledged the receipt of it. A further stipulation was introduced, to the

effect that the officers of the land office published a notice in a newspaper in Marysville, notifying those who claimed pre-emption rights to file their declaratory statements on or before the 15th day of May, 1856. In this stipulation the defendants reserved the right to object to the admissibility of the notice and its publication; and when it was offered in evidence they objected to its admission, but the objection was overruled. The jury found that the plat of the survey of the township was filed February 15th, 1856. The evidence was insufficient to sustain the verdict on that issue. The evidence as to the publication of the notice was not admissible, and when admitted, was not sufficient to overcome the effect of the stipulation as to the time when the plat was received by the Register.

The plaintiff's declaratory statement recited, that on the 13th day of October, 1850, he settled upon and improved the land in controversy, and concluded as follows: "And I do hereby declare my intention to claim the said tract of land as a pre-emption right, under the provisions of said Act of 3d day of March, 1853." On the former appeal this declaratory statement was regarded as intended to be, and as in fact, made and filed under the provisions of the Act of Congress of March 3d, 1853; and it was decided (33 Cal. 75) that the declaratory statement, having been filed on the 16th day of April, 1856, and more than three months after the township plat was returned to the Land Office at Marysville, was not filed within the time prescribed by the Act of March 3d, 1853, and, therefore, did not secure his right of pre-emption.

The decision of that point, became the law of the case, and was binding on the Court below on the new trial. The effect of the decision could be avoided only by showing, that the declaratory statement had been filed within three months after the township plat was returned to the land office. This was not done, but on the contrary the evidence shows that the township plat was returned on the 5th day of December, 1865—more than three months before the declaratory statement was filed.

Judgment reversed, as of December 10th, 1872, and cause remanded for a new trial.

Mr. Chief Justice WALLACE, being disqualified, did not sit in the case.